CADY, Chief Justice
(concurring specially).
I concur in the result reached by the majority.
We have taken important steps in recent years to recognize constitutional protections in the sentencing of juvenile offenders. While the nature of some criminal acts committed by juveniles can be indistinguishable to those of adults and can challenge faith in humanity just the same, the scientific understanding of the human brain has evolved to give greater shape to the constitutional prohibition against cruel and unusual punishment. See State v. Null, 836 N.W.2d 41, 64 (Iowa 2013) (“[Developments in social psychology and neuroscience have reinforced traditional notions that juveniles and adults are, in fact, quite different.”). This constitutional standard now sees juveniles as less culpable than adults and recognizes their significantly greater capacity for rehabilitation. Id. at 74-75. Juveniles are less culpable because they lack maturity and a sense of responsibility, are more prone to impulsive behavior, and are more vulnerable to negative influences. See State v. Lyle, 854 N.W.2d 378, 393, 398 (Iowa 2014) (“[Tjhe time when a seventeen-year-old could seriously be considered to have adult-like culpability has passed.”). Personality traits of juveniles are less fixed than adults, and this difference gives juvenile offenders a greater chance for reform. See id. at 400 (“Given the juvenile’s greater capacity for growth and reform, it is likely a juvenile can rehabilitate faster if given the appropriate opportunity.”). With this understanding, the penological justifications for a fixed mandatory sentence of imprisonment collapse and our constitution demands that we judge juveniles by a different sentencing process than adults.
If the sentencing protections we have recognized for ■•juvenile offenders under *105 our Iowa Constitution were derived solely from their diminished- culpability, my view would be more aligned with the dissent in this case. But scientific evidence of lesser culpability is not the single driving force behind our new protections. The constitutional protections we have recognized do not target mandatory incarceration of juvenile offenders, but mandatory incarceration of juvenile offenders with no' opportunity during the period of incarceration to show the greater likelihood of rehabilitation and reform has occurred. Id. at 403 (“A statute that sends all juvenile offenders to prison for a minimum period of time under all circumstances simply cannot satisfy the standards of decency and fairness embedded in article I, section 17 of the Iowa Constitution.” (Emphasis added.)). The cruel and unusual punishment that is mandatory minimum sentencing of juveniles lies in the total failure to account for the underdeveloped brain of a juvenile. It lies in treating a juvenile like an adult. But the brain development of a juvenile is a process tied to the passage of time, , often years. See State v. Sweet, 879 N.W.2d 811, 838 (Iowa 2016) (“Social science suggests reliable answers to these questions- come only with the benefit of time and completion of brain development.”). Thus, the constitutional protection plays out within the process of parole, not probation. It plays out in our constitutional standard of cruel and unusual punishment, not only because of juveniles’ diminished culpability, but also because of personality changes that accompany their maturity with adulthood. The constitutional standard relies on time for this rehabilitation to occur. It requires only an opportunity for these changes to be considered as directed by the advancements of science.
Our constitutional standards need to grow along with our greater understanding, but no further.
Wiggins, J., joins this special concurrence.